UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

      BLAKE N. WHISMAN,                      Case No. 14-20968-dob
                                          Chapter 7 Proceeding
          Debtor.                    Hon. Daniel S. Opperman
_____/
JILL MALINOWSKI, Trustee of John Homik Trust,

      Plaintiff,

v.                                         Adversary Proceeding
                                          Case No. 14-2041-dob

BLAKE N. WHISMAN,

      Defendant.

_____/

<u>TRIAL OPINION</u>

      The Plaintiff, Jill Malinowski, the Trustee of the John Homik Trust, seeks a determination

from this Court that the debt owed to the John Homik Trust ("Trust") by Blake Whisman in the

amount of $61,410.43 is excepted from discharge pursuant to 11 U.S.C. § 523(a)(4). The Defendant,

Blake Whisman, denies that any amount owed by her to the Trust should be excepted from discharge

and requests that this Court enter a full discharge to her. The Court held a Trial regarding this matter

on January 30, 2015, and heard testimony from the Plaintiff, the Defendant, the Defendant's father,

Charles Whisman, and the Plaintiff's brother, Robert Leff. The Court also admitted Exhibits A, B,

D, and E. After careful consideration of the testimony and the Exhibits, the Court concludes that

all obligations owed by the Defendant, Blake Whisman, are discharged.

<u>Findings of Fact</u>

1

## The Parties

### Jill Malinowski

Jill Malinowski (the "Plaintiff"), is the niece of John Homik and the Trustee of his Trust. Mr. Homik created this Trust with his first wife, Diane Homik.

### John Homik

John Homik was married to Diane Homik, who required personal care. The Homiks hired Greta Blakeslee-Homik to take care of Diane Homik. After Diane Homik's death, John Homik married Greta Blakeslee-Homik.

### Blake Whisman

Blake Whisman (the "Defendant"), is the daughter of Greta Blakeslee-Homik. At the time of Trial, the Defendant was 21 years old and, during many of the events described in this Opinion, was a teenager attending either Ashley High School, Northern Michigan University, or Central Michigan University.

### Greta Blakeslee-Homik

Greta Blakeslee-Homik cared for Diane Homik and developed a close personal relationship with John Homik. After Diane Homik's death, John Homik and Greta Blakeslee-Homik married. During the relationship between the Homiks and Greta Blakeslee-Homik, the value of the John Homik Trust was reduced from approximately $900,000 to a few hundred dollars.

## Pre-Bankruptcy Events

After introducing the parties, the Court summarizes the relevant events regarding this lawsuit. During the time that Greta Blakeslee-Homik cared for Diane Homik, she convinced John Homik to give her money to buy a vehicle and to pay for various expenses incurred by Greta

2

Blakeslee-Homik for her daughter, Blake Whisman. As detailed in a Complaint filed with the Genesee County Probate Court, Greta Blakeslee-Homik took money from the Trust to pay for certain personal expenses and to buy the Defendant a 1999 Jeep. During this time, the Defendant lived with her father, Charles Whisman, because she decided that her mother had alcohol problems and could not provide a stable home environment.

After Diane Homik's death, Greta Blakeslee-Homik and John Homik married. The Defendant learned of the marriage after it occurred, and in much the same way as the Plaintiff subsequently discovered that fact. Shortly after John Homik's second marriage, he required more intensive care and was ultimately placed in a nursing home and subsequently died. Shortly after his death, the Plaintiff determined that Greta Blakeslee-Homik had improperly depleted the Trust and filed a lawsuit against her. As a result of that lawsuit, the Genesee County Probate Court determined that Greta Blakeslee-Homik had exercised undue influence upon John Homik and found Greta Blakeslee-Homik responsible for damages to the Trust. During this trial, the Defendant sat in Court listening to the testimony regarding her mother's actions and heard the jury verdict that found her mother responsible to the Trust because of the undue influence she exerted upon John Homik. By agreement of counsel, the jury verdict was announced on December 3, 2012, with the subsequent judgment entered in early 2013.

Two actions occurred after John Homik's death that are relevant to this action. First, on October 28, 2011, shortly after John Homik's death, Greta Blakeslee-Homik purchased property in Laingsburg, Michigan, which the parties commonly refer to as the "log cabin". Greta Blakeslee-Homik had a deed prepared titling this property in her name, along with the Defendant and Bob Cummings, the then boyfriend of Greta Blakeslee-Homik. As the Defendant testified on January

3

30, 2015, she was not aware that her name was on this deed and she only learned of her interest in that property when she was asked to sign a quitclaim deed transferring her interest to Edith J.A. Cummings, the mother of Bob Cummings.

Second, the Defendant rented a storage unit in 2013 for the purpose of storing furniture and personal property that she had in her mother's home. As the Defendant testified, some of this property included items formerly owned by her deceased grandfather and uncle. After renting this storage unit, however, the Defendant turned the key over to a friend of her mother and she never visited the unit. Accordingly, the Defendant denies knowing anything about the use of the unit or what was kept at the unit. As subsequently developed, however, Greta Blakeslee-Homik used this unit to store property owned by the Trust.

On May 14, 2013, the Plaintiff filed a lawsuit against the Defendant and E.J. Blakeslee in the Genesee County Probate Court. Relevant paragraphs of this Complaint include:

6.  Immediately after John Homik died, a nurse overhead [sic.] Ms. Blakeslee-Homik tell Blake Whisman that John had died and that "all of their bills would now be paid," or words to that effect.

7.  Blake Whisman took, accepted or received Trust assets, or benefitted from items that her mother purchased using Trust assets, including the following:

    (a)  plane tickets purchased with $300 of Trust assets;
    (b)  $2,000 cash for a vacation;
    (c)  a car purchased with $2,439.70 of Trust assets;
    (d)  clothes purchased with $643.19 of Trust assets; and
    (e)  a bicycle purchased with $531.02 of Trust assets.

. . .

9.  Blake Whisman and EJ Dick Blakeslee knew or should have known that Ms. Blakeslee-Homik lacked authority to use Trust assets for the items identified above or that she exercised undue influence over John Homik to access those funds.

10. Blake Whisman conspired with her mother, and possibly others, to hide Trust assets or shield them from recovery by the Trustee.

11. On October 28, 2011, for instance, shortly after John Homik died, Defendant Blakeslee-Homik used Trust assets to purchase property in Laingsburg, Michigan, that was deeded in her name along with Blake Whisman and Bob Cummings.

. . .

13. Blake Whisman and EJ Dick Blakeslee knew or should have known that Ms. Blakeslee-Homik lacked authority to use Trust assets for the items identified above or that she exercised undue influence over John Homik to access those funds.

14. Further, Blake Whisman conspired with her mother to hide or shield Trust assets from recovery by the Trustee.

After a response to the Complaint was filed, the Genesee County Probate Court set a number of hearings and ultimately entered an Order on November 5, 2013. That Order reads:

On August 20, 2013, this Court held a hearing on Plaintiff's motion for sanctions, filed August 8, 2013. Defendants failed to appear and this Court entered a default judgment against Defendants and granted sanctions against Defendant in the amount of $750.00. Plaintiff filed her proposed order on September 12, 2013, pursuant to MCR 2.602(B)(3), to which Defendants objected on September 17, 2013.

On October 17, 2013, this Court held an evidentiary hearing on Defendants objection to Plaintiff's proposed order and on Plaintiff's September 23, 2013, motion for entry of default judgment. On that same day, this Court memorialized its August 20, 2013, ruling from the bench in a written order directing Defendants to pay sanctions in the amount of $750.00, granting Plaintiff's motion for entry of default judgment, and setting an evidentiary hearing regarding the amount of damages only on October 25, 2013.

At the October 25, 2013, evidentiary hearing this Court ruled that a money judgment be entered against Defendants, jointly and severally, in the amount of $61,410.43 in addition to a money judgment representing the $750.00 in sanctions. On October 29, 2013, Plaintiff filed her proposed order pursuant to MCR 2.602(B)(3), to which Defendants objected on November 1, 2013.

Now, the sole issue before this Court is whether Plaintiff's October 29, 2013, proposed order comports with this Court's October 25, 2013, ruling.

5

This Court finds that it does.

NOW, THEREFORE;

IT IS HEREBY ORDERED AND ADJUDGED that Defendants' November 1, 2013, objection to Plaintiff's October 29, 2013, proposed order is DENIED and this Court shall forthwith enter Plaintiff's October 29, 2013, proposed order without further hearing, MCR 2.602(B)(a).

As the Plaintiff testified at Trial, she was able to recover the log cabin property and recover all of the property of the Trust that was stored in the storage unit. The Plaintiff testified credibly as to her efforts to recover property of the Trust and the details involving Greta Blakeslee-Homik's efforts to deplete the Trust. Regrettably, the Plaintiff's efforts have not resulted in a complete restoration of the Trust, as much of the money held by the Trust was spent and consumed without the hope of any recovery of those specific assets.

Likewise, the Defendant testified credibly as to her strained relationship with her mother and her observation that her mother's spending habits changed once she met John Homik. Per the Defendant, she attributed much of this change in spending habit as an attempt by her mother to regain her daughter's love and included buying many items that a parent would buy for a child, as well as other items that may seem extravagant for someone with a history like Greta Blakeslee-Homik. The Defendant denied that she was aware of the source of funds that her mother used and denied that she took any action to knowingly deplete any assets of the Trust.

<u>Jurisdiction</u>

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts).

The issues in this matter arise from Title 11 of the United States Code and do not involve any

6

matter which limits this Court's jurisdiction as detailed by the United States Supreme Court in *Stern v. Marshall*, ---- U.S. ----, 131 S. Ct. 2594, 2608, 180 L.Ed.2d 475 (2011), and later by the United States Supreme Court in *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014). *See also Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

## Applicable Law

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ." The Sixth Circuit has held that § 523(a)(4) requires:

> (1) a fiduciary relationship
> > (a) in the form of an express trust or
> > (b) technical trust relationship;
> (2) breach of that fiduciary relationship; and
> (3) a resulting loss.

*R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 178-79 (6th Cir. 1997); *see also Patel v. Shamrock Floorcovering Services, Inc. (In re Patel)*, 565 F.3d 963 (6th Cir. 2009); *In re Johnson*, 691 F.2d 249, 251-52 (6th Cir. 1982) (finding that fiduciary capacity "applies only to express or technical trusts and does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of equity" and "the requisite trust relationship must exist prior to the act creating the debt and without reference to it") (citations omitted).

To establish the existence of an express trust, the plaintiff "must demonstrate: (1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *In re Patel*, 565 F.3d at 968 (internal quotation marks and citation omitted).

## Defalcation

The Sixth Circuit Court of Appeals has held that defalcation for purposes of § 523(a)(4)

"occurs through the misappropriation [of] or failure to properly account for [ ] funds" by a fiduciary. *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 180 (6th Cir. 1997) (citation omitted). It requires a "pre-existing fiduciary relationship." *Patel v. Shamrock Floorcovering Services, Inc. (In re Patel)*, 565 F.3d 963, 9768 (6th Cir. 2009).

In *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754 (2013), the Supreme Court decided the level of intent required for defalcation under § 523(a)(4).

> [W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term [defalcation] requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. . . . Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty. That risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation.

*Bullock*, 133 S. Ct. at 1759-60 (internal quotation marks and citation omitted).

### Embezzlement and Larceny

"[F]or Section 523(a)(4) purposes, federal common law, rather than state law, controls the meaning of these terms." *Williams v. Noblit (In re Noblit)*, 327 B.R. 307, 311 (Bankr. E.D. Mich. 2005).

"Federal common law defines embezzlement as 'the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.'" *In re Noblit*, 327 B.R. 307, 311 (Bankr. E.D. Mich. 2005) (quoting *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir.1996).

"An essential element of the crime [of embezzlement] is a felonious or fraudulent intent."

8

*People v. Douglass*, 292 N.W. 341, 343 (Mich. 1940) (citation omitted). "[T]he requisite intent to defraud must exist at the time of conversion or appropriation of the property to defendant's own use" *Artman*, 553 N.W.2d at 676. "The mere failure to pay over moneys belonging to another, without a felonious intent, is not embezzlement." *Douglass*, 293 N.W. at 343; *Artman,* 553 N.W.2d at 676. "[C]oncealment or its absence, [or] refusal to pay . . . on demand . . . are not to be taken as declared essentials of the offense or defense but merely as circumstances bearing on the intent." *American Life Insurance Co. v. U.S. Fidelity & Guaranty Co.*, 246 N.W. 71, 73 (Mich. 1933). "If property is converted without concealment, and under a bona fide claim of right, the conversion is not embezzlement, however unfounded the claim may be." *Douglass,* 293 N.W. at 343.

> Larceny is different [from embezzlement] in that the original taking must have been unlawful, and is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner."

*Williams v. Noblit (In re Noblit)*, 327 B.R. 307, 311 (Bankr. E.D. Mich. 2005) (quoting *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 166 (Bankr. N.D. Ohio 2003)).

<u>Analysis</u>

The Court does not find that the Defendant acted with the requisite intent under 11 U.S.C. § 523(a)(4). First, the Court notes that the Defendant was as young as 15 years old when the events relevant to this case started. While a 15 year old person could form the necessary intent under 11 U.S.C. § 523(a)(4), the facts in this case simply do not support such a finding. Here, the Defendant was estranged from her mother and had made the difficult decision to live with her father because of her mother's alcohol problems and the unstable household that she provided to her daughter. While with the benefit of hindsight, one could see that Greta Blakeslee-Homik undoubtedly took money from the Trust, there is insufficient evidence to link that money to the benefits that Greta

9

Blakeslee-Homik conferred on her daughter.  The proofs did not sufficiently link the Defendant to the improper actions of Greta Blakeslee-Homik, despite the inferences and innuendoes that could have emanated from these events.

This is perhaps more true after Greta Blakeslee-Homik married John Homik.  While the Trust certainly was in existence during this time, it would be very easy for a 17-19 year old to think that her mother had married someone with sufficient means to purchase the items that were bought for the Defendant.  Moreover, the Court notes that the types of expenditures made on behalf of the Defendant are not per se extravagant, but were perhaps somewhat greater than one might expect if the true source of funds were known by the Defendant.  Here, however, there is no evidence that existed.  Also, the nature of some of the expenditures, such as the airplane ticket to allow the Defendant to return from Northern Michigan University to mid-Michigan to attend a friend's funeral, do not seem out of place.  Likewise, the purchase of a 1999 Jeep and the bike for travel to Northern Michigan University and then within the general Northern Michigan University area do not seem out of line, especially considering the more expensive alternatives that were available.

Accordingly, the Court finds that the Plaintiff has failed to meet her burden of proof in regard to the necessary elements of fraud and intent to justify a determination that the debts, when incurred, should be excepted from discharge.

The Court also carefully considered the allegations in the Genesee County Probate Court as those allegations must be taken as true for the purposes of this adversary proceeding.  The Court notes that the Complaint does not make any specific allegations of fraud, and certainly has not pled fraud with the necessary particularity as required by the Michigan Court Rules.  As such, while the Court gives due deference to the order of the Genesee County Probate Court, the foundations of that

order are not sufficient to require this Court to rule as a matter of law in favor of the Plaintiff.

The Plaintiff makes a more innovative and persuasive argument that the subsequent partial ownership in the log cabin and the storage unit are sufficient evidence that the Defendant did know what was going on and therefore should be held accountable by having this debt excepted from discharge. The Court has carefully considered these arguments, but is not completely persuaded by them. First, the Court finds the Defendant's testimony credible that she was not aware of her partial ownership in the log cabin property until she was asked to sign a deed by her mother on January 7, 2013. What is more troublesome, however, is that the deed purports to transfer the Defendant's interest to the mother of Greta Blakeslee-Homik's boyfriend, as opposed to returning that interest to the Trust. While disturbing, the Defendant's testimony that she merely wanted to get rid of this property and out of her name as soon as possible when she learned about it sufficiently, but does not completely, explain the Defendant's actions.

Likewise, but less troubling is the analysis of the Defendant's actions regarding the storage unit. While it is true that the storage unit was ultimately used for improper purposes in that Greta Blakeslee-Homik attempted to hide Trust assets, the Defendant denied being aware that the storage unit was used for that purpose and, in fact, she believed the storage unit was being used to store property that rightfully belonged to either her mother or, by inheritance, herself. The Court also found her testimony persuasive that the storage unit should have had property in it that was owned by her late grandfather and uncle such that the Plaintiff's statements that there was property in the storage unit that could not belong to the Defendant because of the male nature of the property is explained. Again, however, the Court does note that it is a bit of a stretch to assume that it is proper to merely rent a unit and then hand over the keys to either her mother or a friend of mother, the

Court does not find that this evidence, either taken separately or in connection with the other evidence introduced at Trial, is sufficient.

The Court also does not find the requisite facts to conclude that any trust relationship existed between the Plaintiff and the Defendant. Accordingly, the Plaintiff has failed to prove that element as required by 11 U.S.C. § 523(a)(4).

The Court reaches these conclusions after noting that the burden of proof in this case is upon the Plaintiff, not the Defendant. The Court has no doubt whatsoever that the Plaintiff acted properly to recover Trust assets and that Greta Blakeslee-Homik was responsible for the depletion of a significant majority of those assets. The Court is also sure that Greta Blakeslee-Homik improperly took Trust assets and victimized both John Homik and Diane Homik. After careful consideration, however, the Court also concludes that Greta Blakeslee-Homik victimized her own daughter.

After all of these conclusions, the Court holds that the Plaintiff, although a victim of Greta Blakeslee-Homik, did not meet her burden of proof to hold the debts owed to the Trust excepted from discharge.

Accordingly, the Court concludes that the Plaintiff's Complaint should be dismissed with prejudice. The Court will enter an Order dismissing this adversary proceeding.

Signed on March 05, 2015

                            /s/ Daniel S. Opperman
                        Daniel S. Opperman
                        United States Bankruptcy Judge